UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUN MAGAR SANDESH,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE,<br><br>                              Respondent. | Case No.: 26-cv-0846-JES-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Pun Magar Sandesh's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed on February 9, 2026. ECF No. 4 ("FAP"). Petitioner initially filed a pro se petition on February 9, 2026. ECF No. 1. After the Court appointed counsel in this matter (ECF No. 2), Petitioner submitted the amended Petition which is now the operative petition. ECF No. 4. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

Petitioner is a native of Nepal who entered the United States on December 2, 2024, fleeing political persecution in his home country. FAP at 2. He was detained at that time, and has since remained in detention. *Id.* He passed an initial credible fear interview and has applied for asylum. *Id.* The final merits hearing in Petitioner's immigration case is set

26-cv-0846-JES-DDL

for April 9, 2026, and he plans to appeal to the Board of Immigration Appeal ("BIA") if he is denied asylum at that hearing. *Id.*

Petitioner filed the operative Petition on February 18, 2026, raising prolonged detention issues and challenging the sufficiency of a bond hearing before an immigration judge ("IJ") as a remedy. *See generally* FAP. The Court ordered Respondents to show cause why the Petition should not be granted no later than February 23, 2026, and Respondents failed to file a response. ECF No. 5. On February 24, 2026, Petitioner filed a Traverse. ECF No. 8. The Court then ordered, and the parties provided, supplemental briefing regarding the proper standard for a bond hearing and Respondents filed a Return. ECF Nos. 9, 10, 11, 12.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

In Respondents' return to the petition, they raise the following arguments: (1) Petitioner's claim is jurisdictionally barred by 8 U.S.C. § 1252; (2) Petitioner is lawfully detained under § 1225; (3) his detention has not become unconstitutionally prolonged as to violate due process. ECF No. 10; and (4) a bond hearing before an IJ is the proper remedy

26-cv-0846-JES-DDL

if the Court finds Petitioner to be entitled to relief. The Court will address each of these issues in turn.

### A.    Jurisdiction and Section 1252

The arguments with regards to jurisdiction being barred under 8 U.S.C. § 1252 are identical to those recently addressed by the undersigned in *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). The Court adopts it reasoning as to these issues and incorporates it by reference. *See also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same).

Accordingly, the Court finds that the jurisdiction stripping provisions of 8 U.S.C. § 1252 do not strip it of jurisdiction to hear Petitioner's claims.

### B.    Detention Under § 1225 and Length of Detention

Respondents argue that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b) because he was detained at the border as an "applicant for admission" and he has never been granted any form of parole. ECF No. 10 at 4-6. Further, Respondents argue that Petitioner's detention has not become unconstitutionally prolonged. *Id.* at 6-10.

The Court agrees that Petitioner was detained at the border and has not been granted any form of parole, so Respondents have the authority to detain him under § 1225(b). However, the Court disagrees that no due process violation can therefore arise, as Respondents claim. ECF No. 10 at 4-6. Respondents essentially argue that § 1225(b) provides no limitation on the length of detention and that the statute provides all the due process that the petitioner is owed. *Id.* This position has been called into question by the Ninth Circuit:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Civil detention violates due process outside of

26-cv-0846-JES-DDL

"certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (alteration in original). Indeed, numerous district courts have found that prolonged mandatory detention at some point will raise due process considerations. *See Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (internal citation omitted); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). Further, even Respondents recognize in their return that district courts within this Circuit have found a potential due process violation to arise when the detention has become too prolonged. *See id.* at 9-11 (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) and analyzing factors).

"Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional." *Amado v. United States Dep't of Just.*, No. 25-CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025). Thus, district courts within this Circuit have employed similar but slightly varying tests. In the *Lopez* case cited by Respondents, the court employed a test with three factors to decide when mandatory detention under § 1226(c) becomes unconstitutionally prolonged: "the total length of detention to date, the duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." 631 F. Supp. 3d at 879. In *Banda v. McAleenan*, 385 F.

4

26-cv-0846-JES-DDL

Supp. 3d 1099, 1118 (W.D. Wash. 2019), the district court considered the following six factors in the § 1225(b) context: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." Other courts have simply applied the generalized *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process test. *See Henriquez v. Garland*, No. 22-cv-869-EJD, 2022 WL 2132919, at *5-6 (N.D. Cal. June 14, 2022).

The Court finds it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1225(b), as other courts within this district have done in the past.[1] *See, e.g.*, *Amado*, 2025 WL 3079052, at *5 (applying 6-factor *Banda* test to mandatory detention under § 1225(b)); *Kadir v. LaRose*, 25CV1045-LL-MMP, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025) (same); *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *4 (S.D. Cal. Sept. 26, 2025); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025).

The <u>first</u> *Banda* factor, the length of detention, is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Petitioner has been detained since December 2, 2024, so his detention is just well over the one-year mark. While this factor itself is not dispositive, the length now is within the range such that this factor should weigh in favor of Petitioner. *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" (citing cases) and finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi*, 2025 WL 3154520, at *3 (though "almost 12 months" detention was not dispositive, finding it to weigh in favor of petitioner); *Gao*, 2025 WL 2770633, at *5 ("The Court finds that

[1] Even though the Court does not employ the *Lopez* test as Respondents cite, the Court notes that the *Lopez* factors are a subset of the *Banda* factors. Based on a discussion of the *Banda* factors below, the Court would reach the same conclusion even if it were to consider solely the *Lopez* factors because it finds the first two *Lopez* factors to weigh in favor of Petitioner and the last factor to be neutral.

26-cv-0846-JES-DDL

Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted). In even the *Lopez* case cited by Respondents, that court found a detention of "approximately one year" to weigh in favor of the petitioner and recognizing that "[d]istrict courts have found shorter lengths of detention . . . without a bond hearing to be unreasonable." Thus, this first and most important factor weighs in favor of Petitioner.

The second *Banda* factor is the likely duration of future detention, and considers "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. Here, Petitioner has not yet had his final merits hearing, and if he loses, will file an appeal to the BIA and will have an opportunity to appeal to the Ninth Circuit as well. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) ("The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. . . . If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals."). These appeals can take a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer). Petitioner's position if he loses leads to a higher potential likelihood of future detention than the *Banda* petitioner, where there was a final removal order from an IJ and he had just filed an appeal to the BIA. The *Banda* court concluded that this factor favored the petitioner under those circumstances, and the Court finds the same here.

26-cv-0846-JES-DDL

The <u>third</u> *Banda* factor is regarding the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *See Kydyrali*, 499 F. Supp. 3d at 773; *Amado*, 2025 WL 3079052, at *6. The Court finds that this factor also weighs in favor of Petitioner.

The <u>fourth</u> and <u>fifth</u> *Banda* factors look to the nature and extent of any delays in the removal proceedings caused by the petitioner and then the government respectively. *Banda*, 385 F. Supp. 3d at 1119-1120. There is no indication in any of the filings before the Court that either Petitioner or Respondents caused any delays in the proceedings. Thus, the Court finds that both of these factors are neutral.

The <u>sixth</u> *Banda* factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). Here, Petitioner has had a positive credible fear finding due to his political persecution in Nepal, and has not yet had his final merits hearing in his immigration case, or any form of appeal. Pet. at 2. The Court is in no position to judge the likelihood of success of this argument, thus the Court finds this factor mostly neutral, weighing at most only slightly in favor of Petitioner.

In summary, at least three of the six factors weigh in favor Petitioner, with the other factors being neutral. Accordingly, the Court concludes that Petitioner's detention of over a year to date under § 1225(b) has become unreasonable and due process requires the Government to provide him with an individualized bond hearing at this time.

### C.    Due Process Requirements at § 1225(b) Bond Hearing

Petitioner alleges that an order by this Court for a bond hearing is inadequate relief because recent immigration bond hearings have denied detainees relief based upon IJs applying the wrong standard. FAP at 9. In his supplemental briefing, Petitioner argues that the proper standard at prolonged detention bond hearings is that the government must show

26-cv-0846-JES-DDL

clear and convincing evidence that a detainee is a flight risk or danger to the community. ECF No. 11 at 3. Respondents argue that IJs are applying the proper standard, which places the burden on detainees to demonstrate that they are not a flight risk or danger to the community. ECF No. 12 at 3. For the reasons set forth below, the Court agrees with Petitioner.

In *Singh v. Holder*, the Ninth Circuit ruled that immigration detainees "facing prolonged detention" were "entitled to a bond hearing before a neutral immigration judge." 638 F.3d 1196, 1200 (9th Cir. 2011). The court explained that "certain procedures that must be followed in those hearings to comport with due process" include that "the burden of establishing whether detention is justified falls on the government." *Id.* at 1200, 1203. The Court explained that, due to the importance of the liberty interest at issue, the government must meet their burden by clear and convincing evidence. *Id.* The court also held that immigration courts must provide detainees with a transcript or audio recording of their bond hearings to comport with due process. *Id.* at 1208. In *Rodriguez Diaz v. Garland*, the Ninth Circuit declined to extend that standard to bond hearings for people detained under 8 U.S.C. § 1226(a), but did not overturn that standard's application to hearings for those held under § 1225(b). 53 F.4th 1189, 1204 (9th Cir. 2022). Additionally, courts regularly held that IJs must consider alternative conditions of release and the detainee's ability to pay in setting the bond amount once they have determined bond is appropriate. *See, e.g., Black v. Decker*, 103 F.4th 133, 158 (2nd Cir. 2024); *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 333-34 (W.D.N.Y. 2018).

Respondents disagree with this standard, arguing that Petitioner's bond hearing should apply the standard for § 1226(a) bond hearings and that the approach in *Singh* is no longer good law following *Rodriguez Diaz*. ECF No. 12 at 2. Respondents correctly state that § 1226(a) bond hearings require as a matter of due process that the immigration judge consider factors including the detainee's ties to the United States, employment history, criminal record, manner of entry into the country, and any history of immigration violations, and that *Rodriguez Diaz* held that the noncitizen bears the burden of proof in

26-cv-0846-JES-DDL

hearings under 1226(a). *Id.*; 53 F.4th at 1197. However, *Rodriguez Diaz* does not overturn *Singh* as to § 1225(b) bond hearings. *Id.* at 1204. Nor does its logic extend to § 1225(b) prolonged detention bond hearings. *See id.* at 1197. As the court explained, "§ 1226(a) stands out from the other immigration detention provisions" because it creates an array of statutory due process protections which are not available to noncitizens detained under other statutes. *Id.* Those protections include an officer's initial custody determination, the ability to request a bond hearing before a removal order is final, predetermined factors an IJ must consider at a bond hearing, the right to appeal an IJ's determination, and the right to request an additional bond hearing for change circumstances. *Id.* The court thus found that *Singh* had improperly applied the doctrine of constitutional avoidance by adding additional due process protections for § 1226(a) bond hearings, and that the statutory bond protections had sufficed to protect due process for the appellee. *Id.* at 1213-14. In doing so, the court repeatedly emphasized the difference between § 1226(a) and statutes lacking those protections like § 1225(b). *Id.* at 1198, 1202. As the Ninth Circuit has since noted, the burden set forth in Singh still applies in the case of at least some statutes without those protections. *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" in the case of a bond hearing for a noncitizen detained under § 1226(c)).

Based on that distinction, district courts since *Rodriguez Diaz* have continued to find *Singh* good law as to § 1225(b) bond hearings for individuals subjected to unconstitutionally prolonged detention without individualized findings. *See, e.g, Sadeqi*, 2025 WL 3154520, at *4 (citing *Singh*, 638 F.3 at 1203 and *Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024)); *see also Kadir*, 2025 WL 2932654, at *6 (granting relief that followed the Singh standard); *Idiev v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-01030-SKO (HC), 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger

26-cv-0846-JES-DDL

to the community").[2]  The immigration detainees in those cases, as here, have been detained mandatorily under § 1225(b) for prolonged periods without any of the protections available to those detained under § 1226(a), including, critically, the government making individualized findings regarding their detention of often more than a year. *See, e.g.,* Pet. at 2 (explaining that Petitioner has been held for 14 months without individualized findings regarding his detention). The Court thus joins its sister courts in finding it appropriate to continue to apply the standard set forth in *Singh* in the case of bond hearings for those subjected to prolonged detention under § 1225(b) to protect the critical liberty interest and due process rights of such individuals. *See, e.g., Banda,* 385 F. Supp. 3d at 1120; *Belqasim v. Bostock,* No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *10 (W.D. Wash. Oct. 28, 2025); *Gao v. LaRose,* 805 F. Supp. 3d 1106, 1112 (S.D. Cal. 2025).

Having set forth the proper standard for Petitioner's bond hearing, the Court declines to address the issues raised by Petitioner regarding the neutrality of immigration courts generally. It is axiomatic that the IJ must apply the proper legal standard to effectuate this Court's order for a bond hearing. District courts are better positioned to review the implementation of their orders in cases such as this after the bond hearing has occurred, so that the complete record in the case may be fairly evaluated. *See, e.g., Judulang v. Chertoff,* 562 F. Supp. 2d 1119, 1126 (S.D. Cal. 2008) (reviewing an IJ's implementation of that court's order for a bond hearing on habeas).

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

---

[2] Courts have occasionally referenced § 1226(a) in ordering bond hearings for individuals detained under § 1225(b) and subjected to prolonged detention. *See, e.g., Lopez-Campos,* 797 F. Supp. 3d at 786. The Court finds it likely that such references stand as a shorthand for immigration bond hearings due to the novelty of the issue and § 1226(a)'s explicit provision of bond hearings. However, per the above analysis, the Court finds that bond hearings under the two statutes are subject to different standards as two distinct statutory schemes governing distinct populations. *See Jennings v. Rodriguez,* 583 U.S. 281, 287-89 (2018) (explaining the distinctions between the two statutorily created groups).

26-cv-0846-JES-DDL

(1) The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order.

    a. At the hearing, the government **SHALL BEAR** the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released.

    b. The IJ **SHALL** consider alternative conditions of release and Petitioner's ability to pay bond if he or she determines bond is appropriate.

    c. Respondents **SHALL** make a complete record of the bond hearing available to Petitioner and his counsel.

(2) Respondents are **ORDERED** to File a Notice of Compliance within **five days** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

The Clerk of Court is **ORDERED** to **CLOSE** this case.

    **IT IS SO ORDERED.**

Dated: March 4, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

11

26-cv-0846-JES-DDL